**Date signed January 21, 2005**



_____
PAUL MANNES
U. S. BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| MEDINA M. WHITE | : | Case No. 03-32319PM |
| | : | Chapter 7 |
| Debtor | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |
| MERRILL COHEN, Trustee | : | |
| Plaintiff | : | |
| vs. | : | Adversary No. 04-1472PM |
| | : | |
| JOHN S. PHILLIPS | : | |
| JILL S. PHILLIPS | : | |
| Defendants | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |

**MEMORANDUM OF DECISION**
(Defendants' Motion for Summary Judgment)

Before the court is the Defendants' Motion for Summary Judgment as to the Trustee's Complaint to Avoid a Fraudulent Conveyance. For the most part, the facts are undisputed. On December 8, 2003, Medina M. White filed a bankruptcy case under Chapter 7. Merrill Cohen was appointed Interim Trustee, and, pursuant to § 702(d) of the Bankruptcy Code, now serves as the Trustee in this case, as a trustee was not elected.

Before the bankruptcy case was filed, Debtor owned real estate known as 9308 Long Branch Parkway, Silver Spring, Maryland, that was subject to lien of a deed of trust then in default. On the morning of September 26, 2003, the foreclosure sale that was scheduled to be held on the steps of the Montgomery County Judicial Center in Rockville, Maryland, the Debtor and the Defendant John S. Phillips (sometimes "Purchaser") entered into a simple one-page

handwritten contract that was executed before a notary public.  By the contract, Debtor agreed to sell Mr. Phillips the property for $215,000.00 with a $15,000.00 downpayment in the form of a cashier's check and the balance to be paid at closing.  The Purchaser agreed to pay all expenses of sale as well as transfer taxes.

After the contract was signed, the parties then delivered the cashier's check to the attorneys who were overseeing the foreclosure sale on behalf of the foreclosing creditor, who accepted the check and cancelled the sale.  Settlement of the sale was consummated on June 20, 1003.  The Purchaser paid the balance of the purchase price.  Debtor deeded the property to John S. Phillips and Jill S. Phillips as tenants by the entirety.  After payment of the secured creditor and her settlement charges, Debtor received $91,431.18.  There was no broker's commission.

On April 23, 2004, the Trustee filed this Complaint for avoidance and recovery of the fraudulent transfer.  The Trustee alleged in paragraph 10 of the Complaint, "upon information and belief, the fair market value of the subject property at the time of its transfer from the Debtor to the Defendants was in excess of $300,000.00."  The case is brought pursuant to § 548(a)(1)(B)(i) of the Bankruptcy Code that provides:

> **11 U.S.C. § 548.  Fraudulent transfers and obligations**
>
> (a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligations incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
>
> \*        \*        \*        \*        \*
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation.

Defendant's Interrogatory No. 2 sought the factual basis for the allegation in the complaint that the Debtor received less than equivalent value in exchange for the property.  The answer was that the Debtor sold property worth $300,000.00 for $215,000.00.  He further submitted an appraiser's opinion that at the time of the transfer on October 20, 2003, the subject property had a fair market value of $300,000.00.  It is acknowledged that in calculating what the Debtor received in this transaction, there must also be added the realtor's commission that was not paid and the expenses of sale that were absorbed by the Purchaser.

The burden of proof in establishing that the transfer was not made for fair equivalent value on the critical date is on the Trustee.  *In re Morris Communications, Inc.*, 914 F.2d 458,

466 (CA4 1990). While earlier cases such as *Durrett v. Washington National Insurance Co.*, 621 F.2d 201, 203 (CA5 1980), held that a sale generally would be protected from a fraudulent conveyance claim that produced less than 70% of the market value, the Fourth Circuit adopted in the *Morris* case a less rigid approach rejecting any fixed mathematical formula. In *Morris*, the court looked to the facts and circumstances of the case at the time of the transaction. Here, the parties were strangers with the Debtor facing imminent foreclosure of her home. She was after the best deal that she could make as was the Purchaser. The Purchaser assumed the risk of the condition of the property, as well as the risk that the Debtor could have filed a bankruptcy case after the cashier's check was used to stop the sale and thereupon the contract could have been rejected

The Purchaser was attempting to make the best deal that he could. The Trustee relies upon the appraisal of Mark Spitalnick, who reaches a decision that the fair market value of the subject property was worth $300,000.00. The appraisal was made some nine months after the transfer. The appraiser's report states:

> **DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affect by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangement comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

At least three of the five conditions supporting this definition are not found in this case. The seller was not a typically motivated seller. She was facing an imminent foreclosure. Neither party was especially well informed or well advised, and the Purchaser had no idea what was on the inside of the property that he was buying. Finally, the property was not exposed to the market for any period whatsoever. Here, the only support offered by the Trustee is an appraisal that is based upon a situation that does not relate to the facts before the court. The case of *Salven v. Munday (In re Kemmer)*, 265 B.R. 224 (BC E.D. Calif. 2001), is relied upon by the Trustee for the proposition that the exigent circumstances of a seller and the seller's willingness to sell

property at an unreasonably low price does not make the resulting sale reasonable. In *Salven*, the debtors disposed of property on the eve of an adverse judgment being entered against them in an effort to use the funds received to acquire an exempt homestead. Unlike the present case, the court found that the sellers had no motive to obtain the highest prices obtainable. All they were seeking was $100,000.00 of assets from the sale of their mountain cabin that they could shift into a new home that they could claim as exempt. The court also found a special relationship between the parties and that the sale was not conducted at arms length.

The court gives no credit to the Trustee's argument that Debtor was denied the opportunity to see what she what she would have received at foreclosure. Even if the foreclosure produced after the expenses of sale, including the commissions to the Trustee, less than what was produced here, without such a safe harbor Debtor could not be said to have received reasonably equivalent value. *BFP v. Resolution Trust Corporation*, 511 U.S. 531 (1994). In *BFP*, as the dissent points out, the Court held that Congress intended a peppercorn paid at a noncollusive and procedurally regular foreclosure sale to be treated as the reasonably equivalent value of a California beachfront estate.

Although the moving party must provide more than a conclusory statement that there are no genuine issues of material fact to support a motion for summary judgment, it "'need not produce evidence, but simply can argue that there is an absence of evidence by which the nonmovant can prove his case.'" *Cray Communications, Inc. v. Novatel Comp. Sys., Inc.*, 33 F.3d 390, 393-94 (4th Cir. 1994) (quoting 10A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2720, at 10 (2d ed. Supp. 1994)); *see also Celotex*, 477 U.S. at 325 ("[T]the burden on the moving party may be discharged by 'showing'--that is, pointing out to the district court-- that there is an absence of evidence to support the nonmoving party's case."). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facs showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed.R.Civ.P. 56(e)). The nonmoving party's evidence must be probative, not merely colorable, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986), cannot be "conclusory statements . . . without specific evidentiary support," *Causey v. Balog*, 162 F.3d 795, 801-02 (4th Cir. 1998), cannot be hearsay, *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996), and must "contain admissible evidence and be based on personal knowledge." *Id.*

Where does this leave the court? It is conceivable that the trier of fact might find, after according the Plaintiff the most favorable inferences that may reasonably be drawn from the forecasted evidence under the Fourth Circuit standard found in such cases as *Cooke v. Manufactured Home, Inc.,* 998 F.2d 1256 (CA4 1993), that in this fact-intensive inquiry that the Debtor received less than reasonably equivalent value for her home. It is upon this very slender reed of the fair market value appraisal that the Trustee relies upon to sustain his complaint that the court relies likewise in denying the Motion for Summary Judgment.

An appropriate order will be entered.

cc:
Merrill Cohen, Trustee, 7101 Wisconsin Avenue, Suite 1200, Bethesda, MD 20814
Morton A. Faller, Esq., 11921 Rockville Pike, Rockville, MD 20852

**End of Memorandum**